# In the United States Court of Federal Claims

No. 20-1173

(Filed: March 22, 2021)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JACK STONE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

*Pro Se*; Lack of Subject-Matter Jurisdiction; RCFC 12(b)(1); *In Forma Pauperis*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jack Stone*, Miyagi, Japan, *pro se*.

*Richard P. Schroeder*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## ORDER AND OPINION

**DIETZ, Judge.**

Jack Stone, a *pro se* plaintiff, asserts multiple claims against the government due to the government's failure to provide a visa to his spouse, a passport to his first child, and citizenship documents to his second child. The government filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, failure to state a claim pursuant to Rule 12(b)(6). The Court finds that Stone fails to cite a money-mandating source of law that provides this Court with jurisdiction and, therefore, dismisses his claims.

Stone filed two additional motions: Motion to Add an Addendum and Motion to Proceed *In Forma Pauperis*. Stone's Motion to Add an Addendum claims additional damages arising from the government's actions, but his addendum—like his Complaint—does not cite a money-mandating source of law that provides this Court with jurisdiction. Stone's Motion to Proceed *In Forma Pauperis*, however, succeeds since Stone adequately demonstrates that payment of the Court's filing fees would result in a significant hardship.

For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss, **DENIES** Plaintiff's Motion to Add an Addendum, and **GRANTS** Plaintiff's Motion to Proceed *in Forma Pauperis*.

I.  **BACKGROUND**

In March 2017, Jack Stone, a United States citizen, was preparing to move permanently to the United States with his spouse—Miyuki Suzuki—and their first child. Compl. at 8, ECF No. 1. Stone assisted Suzuki—a Japanese citizen—with multiple visa and immigration processes, including payment of various application fees to United States Citizenship and Immigration Services ("USCIS"). *Id*. at 8-9, 11. These fees include an initial I-130 spousal visa application fee and application fee for an I-485 Application to Register Residence or Adjust Status ("ARRAS"). *Id*. at 8, 11. With respect to the initial application fee, Stone alleges that USCIS rejected a cashier's check for $525.00 as payment and returned the check "to an address that doesn't exist." *Id*. at 8-9. In sum, Stone alleges that he spent "more than 2500.00 USD in visa related fees, not including the 525.00 USD Plaintiff was not reimbursed for the lost cashier's check[,]" which caused financial hardship and forced him to sell his personal belongings.[1] *Id*. at 9, 11.

Stone and his family decided to visit the United States in March 2018. Compl. at 10. Suzuki entered the United States on an "I-94 90-day tourist visa." *Id*. While in the United States, Suzuki completed several parts of her visa application process at the USCIS, Miami, Kendall Beach branch. *Id*. On October 11, 2018, Stone—after no updates on Suzuki's visa—returned to Japan to renew his spousal visa in compliance with Japanese immigration law. *Id*. at 12. Suzuki and his first child remained in the United States. *Id*. On November 11, 2018, the same day Stone was scheduled to return to the United States, Suzuki— along with their first child and without Stone's consent—fled the United States and returned to Japan. *Id*. at 13. Stone unsuccessfully attempted to stop Suzuki from fleeing with his first child by contacting the Department of State ("DOS"), Office of Children's Issues ("OCI"), which Stone claims "took no action whatsoever to block the abduction of Plaintiff's child out of the state of Florida." *Id*.

After arriving in Japan, Suzuki destroyed their first child's passport "so the child could not return to the U.S." Compl. at 13, 21. Suzuki "hid" their first child for two months "at an undisclosed location" in Japan until Stone located the child and took physical custody on January 4, 2019. *Id*. at 13, 17. After taking custody, Stone applied three times for a replacement passport for his first child, and each application was denied by DOS. *Id*. at 22, 33. Stone claims the passport applications were denied for two reasons. First, at the request of Suzuki, DOS placed their first child "in a 'passport protection program' to prevent the child from obtaining a passport and returning to the child's habitual place of residency." *Id*. at 22. Second, that DOS denied his first child's final passport application at the direction of a United States Senator's assistant. *Id*. at 33-34. According to Stone, "[i]nstead of aiding Plaintiff and child [to] obtain [a] passport," the Senator's assistant "interjected herself wrongfully" and turned over to the Tokyo Embassy information about Stone's children—including a copy of Stone's first child's original passport—without Stone's permission. *Id*. at 34.

Suzuki gave birth to a second child in Japan. Compl. at 13, 40. Stone claims that he has no access to his second child and "the DOS/OCI has refused to take action to aid in ensuring [Stone] has access to the child" because "[Stone] filed suit against the DOS." *Id*. at 17. On December 19, 2019, Stone applied online for a Consular Report of Birth Abroad ("CRBA") for

---

[1] Stone provides a detailed list of assets sold while in Japan and claims $44,400 in damages. *See* Compl. at 9-10.

his second child and paid a $100.00 application fee. *Id.* at 41-42. Thereafter, DOS rejected Stone's CRBA application because Stone did not provide the required documents and could not arrange an appearance by his second child for an interview at the Tokyo Embassy. *Id*. at 42-43. Stone also attempted to apply directly to the Social Security Administration for a social security card for his second child but was told that "he had to obtain the card from the U.S. Tokyo Embassy." *Id*. at 50. Without a CRBA or social security card, Stone's second child is unable to collect any coronavirus pandemic stimulus benefits. *Id*. at 40, 51.

Stone remains in Japan "under threat of arrest and deportation" due to his expired Japanese visa. Compl. at 52. Stone states that he and his first child "have slept on a floor, without blinds or basic necessities" because his family has "no assets, no furnishings, and no other assets." Pl.'s Resp. to Def.'s Mot. to Dismiss at 25, ECF No. 22 [hereinafter Pl.'s Resp.]. Additionally, Stone states that he is "legally disabled" after "having to wash clothing without a machine by hand, resulted in surgery to [his] right shoulder and permanent injury to [his] right thumb joint, where the cartilage has been destroyed." *Id*. Stone and his first child were set to be evicted from their apartment in Japan on January 21, 2021. *Id*. at 2.

## II. PROCEDURAL HISTORY

Stone filed his Complaint on September 8, 2020 demanding "to be put back in the financial and life-style position [he] was in prior to relying on Defendant's false representations" and "actual damages in excess of 225,000.00 USD." Compl. at 53, 55, 60 ECF No. 1. Stone also submitted an unopposed Application to Proceed *In Forma Pauperis* to waive the filing fee of $402.00. *See* Pl.'s Mot. to Proceed *In Forma Pauperis*, ECF No. 2 [hereinafter, IFP].

The government filed a motion to dismiss Stone's complaint on December 10, 2020, arguing that Stone failed to cite a money-mandating source of law that provides this Court with jurisdiction or, alternatively, that Stone failed to state a claim upon which relief can be granted.[2] Def. Mot. to Dismiss at 7, ECF No. 16 [hereinafter Def.'s Mot.]. Stone responded to the motion to dismiss on January 8, 2021 asserting that the "Department of State, U.S. Central Authorities, Tokyo Embassy, and Office of Children's Issues failed to adhere to numerous mandates and those failures resulted in great financial harm to [his] family." Pl.'s Resp. at 33. Stone further claimed he has "overwhelmingly proven damages and that this Court has jurisdiction over the matters" raised in his Complaint. *Id.*

Stone filed a Motion for Permission to Add an Addendum to the Underlying Claim on January 21, 2021 wherein Stone seeks to include additional damages of "161,000.00 USD." Pl.'s Mot. for Permission to Add an Addendum at 1, ECF No. 30 [hereinafter Mot. for Addendum]. Stone claims these damages arise from the "loss of an employment contract" resulting from "final agency action which is an arbitrary, capricious, abuses of power and abuses of discretion, which amounts to torture, false imprisonment, and child endangerment." *Id.* Stone argues that he is entitled to these damages under the Administrative Procedure Act ("APA"). *Id.* at 1-4. The government filed a response on February 3, 2021, arguing that the motion should be denied because this Court lacks jurisdiction over APA claims, and Stone provides no alternative basis

---

[2] Because Stone's claims are properly dismissed on jurisdictional grounds, it is unnecessary to evaluate the government's Rule 12(b)(6) argument.

for jurisdiction over his claims. Def.'s Resp. to Mot. for Addendum at 2, ECF No. 32. Stone's reply was due February 10, 2021, but a reply from Stone has not been received as of the date of this opinion.[3]

### III.   LEGAL STANDARDS

A motion to dismiss for lack of subject-matter jurisdiction challenges the court's "general power to adjudicate in specific areas of substantive law[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1990); *see also* RCFC 12(b)(1). When considering a motion to dismiss for lack of jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Jurisdiction is a threshold issue the court must address before proceeding to the merits of the case. *See Remote Diagnostic Techs. LLC v. United States*, 133 Fed. Cl. 198, 202 (2017) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Pleadings from *pro se* plaintiffs are held to a more lenient standard than pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Erickson v. Pardas*, 551 U.S. 89, 94 (2007). A *pro se* plaintiff is entitled to a liberal construction of his pleadings. *Johnson v. United States*, 123 Fed. Cl. 174, 177 (2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, a *pro se* plaintiff must satisfy the jurisdictional requirements, despite the more lenient standard. *Trevino v. United States*, 113 Fed. Cl. 204, 208 (2013), *aff'd*, 557 F. App'x 995 (Fed. Cir. 2014). *Pro se* plaintiffs—as with all plaintiffs—must establish this Court's jurisdiction over their claims by a preponderance of the evidence. *See Alston-Bullock v. United States*, 122 Fed. Cl. 38, 40 (2015); *see also Spengler v. United States*, 688 F. App'x 917, 920 (Fed. Cir. 2017).

This Court's jurisdiction is defined by the Tucker Act, which waives the sovereign immunity of the United States for claims—not sounding in tort— founded upon the Constitution, an Act of Congress, an executive department regulation, or an express or implied contract with the United States. *See* 28 U.S.C. 1491 (2018). The Tucker Act, however, is "merely a jurisdictional statute and does not create a substantive cause of action." *Rick's Mushrooms Serv. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). A plaintiff must "identify a substantive source of law that creates the right to recover money damages against the United States." *Rick's Mushrooms*, 521 F.3d at 1342 (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government." *Testan*, 424 U.S. at 400.

---

[3] The Court revoked Stone's electronic filing privileges on January 22, 2021 due to Stone's repeated failure to comply with the General Order governing electronic filing procedures by *pro se* plaintiffs, as well as Court rules. *See* Order, Jan. 22, 2021, ECF No. 31. Notwithstanding, Stone has had sufficient time to file a reply or, at a minimum, a request for an enlargement of time to file a reply through other available means.

## IV.   DISCUSSION

### A.   Stone's Complaint

Stone's pleadings were lengthy, wandering, and difficult to analyze. Through a liberal reading, the Court fairly construes his pleadings to assert five claims: (1) a review of the government's actions under the APA, (2) a refund of fees paid by Stone for Suzuki's visa application and his children's citizenship documents, (3) a privacy act claim, (4) tort claims for false imprisonment and personal injury, and (5) a constitutional claim for cruel and unusual punishment.[4] Because Stone fails to identify a money-mandating source of law, none of his claims meet this Court's jurisdictional requirements, and his claims must be dismissed.

#### 1.   APA Claim

The heart of Stone's pleadings consists of an APA claim.[5] Stone repeatedly insists that USCIS and DOS committed "arbitrary and capricious" agency actions. Compl. at 15, 17, 22, 24-25, 28, 30, 36, 39, 49, 53, 57, 59; Pl.'s Resp. at 5, 9-10, 13, 17, 27-30. Stone further claims that "Defendants' failure to finalize [Suzuki's] 'approved' visa resulted in a domino effect of damages, including seemingly endless legal proceedings." Compl. at 17. While the APA waives sovereign immunity and entitles a person wronged by agency action to judicial review, *see* 5 U.S.C. §703 (2018), relief under the APA is limited to "relief other than money damages." 5 U.S.C. § 702 (2018); *see Wopsock v. Natchess*, 454 F.3d. 1327, 1333 (Fed. Cir. 2006) (finding that the APA is not a money-mandating statute). Since the APA does not provide for money damages, APA claims fall outside of this Court's jurisdiction. *See Albino v. United States*, 104 Fed. Cl. 801, 815 (2012).

#### 2.   Refund Claim for Application Fees

Stone seeks a refund of fees paid in connection with Suzuki's visa application and his children's citizenship documents. Stone claims he paid $3,500.00 to apply for Suzuki's visa (which includes paying a $525.00 fee twice because he alleges the government returned the first cashier's check to the wrong address), $150.00 for his first child's passport applications, and $100.00 for his second child's CRBA application and social security card. Pl.'s Resp. at 24. Unfortunately, there are no regulations that entitle Stone to a refund. Under USCIS regulations, "filing fees generally are non-refundable." 8 C.F.R. § 103.2(a)(1) (2021). Similarly, under DOS regulations, fees are only refundable when erroneously exacted from an individual who is

---

[4] Stone, in his response to the government's Motion to Dismiss, also cites the Social Security Act, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and the False Claims Act ("FCA"), none of which give this Court jurisdiction. *See* Pl.'s Resp. at 20-24. Only federal district courts possess jurisdiction over claims under the Social Security Act. *See* 42 U.S.C. 405(g) (2018); *See also Wilson ex. Re. Estate of Wilson v. United States*, 405 F.3d 1002, 1013 (Fed. Cir. 2005). The UCCJEA is a state family law statute, and this Court lacks jurisdiction over state law claims. *See* 28 U.S.C. § 1491(a)(1); *Sounders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir 2007) ("Claims founded on state law are also outside the scope of limited jurisdiction of the Court of Federal Claims"). The FCA provides the basis for claims that an individual has defrauded the government, not that the government defrauded an individual. *See* 31 U.S.C. § 3729(a) (2018).

[5] Stone stated on the cover sheet of his complaint that "[t]his is an Administrative Procedure Act claim." Civil Compl. Cover Sheet, ECF No. 1-3.

exempt from payment, *see* 22 C.F.R. § 22.6 (2021), or when DOS collects an expedited passport fee and fails to provide expedited passport processing. *See* 22 C.F.R. § 51.53 (2021). Stone provides no evidence that he qualifies for an exception to the general no-refund rule for these government agencies, and he does not cite an alternative source of law that entitles him to a refund. Stone also fails to cite any source of law that entitles him to relief for the cashier's check that he alleges the government erroneously sent to the wrong address. The Court is unable to find a money-mandating source of law in Stone's complaint that provides the Court with jurisdiction over his claims for a refund of fees paid or reimbursement for the lost cashier's check.

### 3. Privacy Act Claim

Stone alleges a Privacy Act claim against a Senator's assistant for disclosing "numerous private matters, records, [and] communications" to DOS officials. Compl. at 33-38. This Court lacks jurisdiction over this claim for two reasons. First, this Court's jurisdiction is confined to reviewing claims for money damages against the United States, not its officers or other individuals. *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997); *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003). "[I]f the relief sought is against others than the United States," then the suit must be dismissed for lack of jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 588 (1941). Though Stone identifies the United States as the defendant, his Privacy Act allegations are directed at the Senator's assistant. The Court lacks jurisdiction to hear any claims against the Senator's assistant in an individual capacity. Second, even if the Court could hear claims against individuals, United States district courts have exclusive jurisdiction over Privacy Act claims. *See* 5 U.S.C. §552a(g)(1) (2018); *see also Bush v. United States*, 627 Fed. App'x 928, 930 (Fed. Cir. 2016) (citing *Treece v. United States*, 96 Fed. Cl. 226, 232 (2010)).

### 4. Tort Claims for False Imprisonment and Personal Injury

Stone asserts two tort claims. First, a false imprisonment claim resulting from the government's failure to provide his child with a passport which restricted his and his child's ability to travel. *See* Pl.'s Resp. 22. Second, a personal injury claim for hand and shoulder injuries from repeatedly hand-washing clothes. *See* Pl.'s Resp. 22, 25. Stone alleges that his injuries resulted from his strained financial condition and loss of personal property—including his washing machine—following Suzuki's visa application process and the application process to obtain citizenship documents for his children. *Id*. at 25. Stone argues that this Court can hear these claims under the Federal Tort Claims Act ("FTCA"). *Id.* at 32. However, despite the FTCA's waiving immunity for torts caused by employees of the government, United States district courts have "exclusive jurisdiction" over FTCA claims. 28 U.S.C. § 1346(b) (2018). Additionally, under the Tucker Act, this Court explicitly and unambiguously "lacks jurisdiction over tort actions against the United States." *Brown*, 105 F.3d at 623 (citing *Keene Corp. v. United States* 508 U.S. 200, 2014 (1993)); *see also* 28 U.S.C. § 1491(a)(1) (excluding cases "sounding in tort" from this Court's jurisdiction). The Court therefore lacks jurisdiction to consider Stone's tort claims.

### 5. Constitutional Claim for Cruel and Unusual Punishment

Stone claims that the government's actions caused him and his family to be "falsely imprisoned [and] retained in hostage-like conditions in a foreign country[.]" Pl.'s Resp. at 22. Stone argues these actions violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. This Court may hear constitutional challenges when the Constitution "expressly creates a substantive right enforceable against the federal government for money damages." *LeBlanc,* 50 F.3d at 1028 (citing *Testan*, 424 U.S. at 398). The Eighth Amendment, however, is not a "money-mandating" provision that grants this Court jurisdiction. *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007). Accordingly, this Court lacks jurisdiction over Stone's Eighth Amendment claims.

### B. Stone's Motion to Add an Addendum to the Underlying Claim

Stone seeks to add to his Complaint monetary damages of "161,000.00 USD" that he claims arise from the loss of a two-year employment contract to teach medical staff at a hospital in Dubai. Pl.'s Mot for Addendum at 2. Stone alleges these additional damages result from his and his child's inability to leave Japan "because the relevant government agencies and their government agency counsel refuse to reissue" passports to his first child. *Id*. at 3. Stone argues that he is entitled to include these monetary damages as part of a review of his case under the APA. *Id.* at 4. Stone does not cite to any additional sources of law.

This Court, as discussed above, lacks jurisdiction to consider claims arising under the APA because the APA is not a money-mandating source of law. *See Wopsock*, 454 F.3d at 1333. Because Stone's motion follows the same logic as his Complaint and cites no source of law that establishes jurisdiction in this Court, Stone's motion must be denied.

### C. Stone's Motion to Proceed *In forma Pauperis*

Stone filed an Application to Proceed *In Forma Pauperis*. *See* IFP. If Stone's motion is granted, the full filing fee of $402.00—a $352.00 filing fee plus a $50.00 administrative fee—is waived. Whether to allow a plaintiff to proceed *in forma pauperis* is left to the discretion of the presiding judge, based on information submitted by the plaintiff. *See, e.g.*, *Fridman v. City of New York*, 195 F.Supp.2d 534, 536 (S.D.N.Y.), *aff'd,* 52 Fed.App'x. 157 (2d Cir. 2002). Under 28 U.S.C. § 1915(a), "any court of the United States may authorize the commencement . . . of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees or give security therefor." 28 U.S.C § 1915(a)(1)(2018).  A plaintiff does not have to be "absolutely destitute to enjoy the benefit of the statute." *Adkins v. E.I. DuPont De Nemours & Co.*, 335 U.S. 331, 339 (1948). An affidavit demonstrating that a plaintiff is unable to pay the fee or give security and still provide for himself and any dependents is sufficient. *See id.* The Court, however, must balance a plaintiff's hardship against the frivolousness of the plaintiff's suit. *See Neitzke v. William*, 490 U.S. 319, 324 ("Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."). A complaint is

7

frivolous "where it lacks an arguable basis either in law or fact" and the claims are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992).

From a review of Stone's application, the Court finds that requiring Stone to pay the filing fee would present considerable hardship, as it would account for more than half of his monthly income. Stone states that he has only $20.00 in his bank account and that his only source of income is a Japanese public assistance payment of approximately $800.00. IFP at 2. This payment is used for Stone's rent, food, and childcare obligations. *Id*. Stone is also currently unemployed. *Id*. at 1. While Stone filed similar claims in other courts, the Court finds that his Complaint does not rise to the level of frivolous. *See* Compl. 3-6. Stone's claims, though outside the jurisdiction of this Court, are not "clearly baseless." Accordingly, Stone's Motion to Proceed *In Forma Pauperis* is granted.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED** without prejudice pursuant to RCFC 12(b)(1), and Plaintiff's Motion to Add an Addendum is **DENIED**. Plaintiff's Motion to Proceed *In Forma Pauperis* is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz\
THOMPSON M. DIETZ, Judge